27 So.3d 611 (2009)
Jerry Richard PERKINS
v.
STATE of Alabama.
CR-06-1828.
Court of Criminal Appeals of Alabama.
February 27, 2009.
Rehearing Denied April 24, 2009.
Certiorari Denied August 14, 2009 Alabama Supreme Court 1080994.
*612 Daniel W. Wainscott, Birmingham, for appellant.
Troy King, atty. gen., and John J. Davis, asst. atty. gen., for appellee.
WISE, Presiding Judge.
The appellant, Jerry Richard Perkins, was convicted of third-degree domestic violence based on harassment, a violation of § 13A-6-132, Ala.Code 1975. The trial court sentenced him to serve a term of one year in the county jail, but split the sentence and ordered him to serve twenty days followed by two years on probation. Perkins filed a motion for a new trial, which the trial court denied after conducting a hearing. This appeal followed.
Deputy Danny Humphrey of the Jefferson County Sheriff's Department testified that, around midnight on September 29, 2006, he and Deputy Phillip Humphries were dispatched to the residence where Perkins and Campbell lived. They knocked on the door, and Campbell answered the door. She whispered in a low voice and told them she had telephoned them, asked them not to let Perkins know she had telephoned them, started telling them what had happened, and asked them to stay while she got her things so she could leave. At that point, Humphrey told her he would have to go inside and take a report from her because it was a domestic disturbance.
Humphrey testified that Campbell told him she had had an altercation with Perkins and was explaining what had happened when Perkins came into the room. He also testified that Campbell stated that she had been out picking up cans and that, when she returned to the residence, Perkins had grabbed her by the throat, struck her on her face and head, made her enter the residence and undress, and checked her vagina for semen. Humphrey further testified that, at that point, Perkins volunteered that he had not struck Campbell, but admitted that he had grabbed her by the neck, made her enter the residence and undress, and checked her vagina to find out if she had been using drugs because she allegedly produced a white, milky substance when she had been using drugs.
Humphrey testified that Campbell was very upset and nervous and was shaking and crying. He also identified pictures of Campbell that depicted how she looked at that time and testified that she had a red mark on her neck that appeared to have been made recently. Finally, he testified that he had been to the residence before, that Perkins and Campbell were boyfriend and girlfriend, and that they lived together at the residence.
Perkins testified that, when he returned to their residence from work on September 29, 2006, Campbell was not there, and he could not find her. He stated that, when she returned, he believed she had been abusing pills, and they argued about where she had been and what she had been doing. However, he testified that he did not strike her, choke her, put his hands on her, make her take off her clothes, or check her vagina.
Perkins testified that they went to bed around 10:00 p.m., that he was in bed sleeping when the deputies arrived, and that they woke him around 2:30 a.m. He also testified that he did not tell Humphrey that he choked Campbell and made her undress.
Perkins argues that the trial court erred in allowing Humphrey to testify *613 about the statements Campbell made to him. Specifically, he contends that Humphrey's testimony was inadmissible hearsay and that "there was no direct testimony that could in any way inculpate [him] in any crime against the alleged victim." (Perkins's brief at p. 3.) Thus, he concludes that his "conviction is based solely upon incompetent and inadmissible evidence that should have been excluded." (Perkins's brief at p. 4.)
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala. R. Evid. Assuming, without deciding, that Humphrey's testimony about what Campbell told him Perkins did to her constituted inadmissible hearsay, that same evidence was subsequently admitted when Humphrey testified about what Perkins told him at the scene. Rule 801(d)(2)(A), Ala. R. Evid., specifically provides that a statement offered against a party that is the party's own statement is not hearsay, but rather is an admission by a party opponent. Thus, Humphrey's testimony about what Perkins said at the scene was not hearsay and was admissible as an admission by Perkins. That admission presented the same summary of the offense as Humphrey's testimony about what Campbell stated and about which Perkins now complains. "[T]estimony that may be inadmissible may be rendered harmless by prior or subsequent lawful testimony to the same effect or from which the same facts can be inferred." White v. State, 650 So.2d 538, 541 (Ala.Crim.App.1994), overruled on other grounds, Ex parte Rivers, 669 So.2d 239 (Ala.Crim.App.1995). Therefore, Humphrey's testimony about what Campbell told him was merely cumulative to Perkins's admission.
Moreover, Humphrey testified that Perkins stated that he had not struck Campbell, but admitted that he had grabbed her by the neck, made her enter the residence and undress, and checked her vagina to find out if she had been using drugs because she allegedly produced a white, milky substance when she had been using drugs. He also testified that Campbell was upset, nervous, shaking, and crying when they arrived. Finally, the State introduced photographs of Campbell that depicted how she looked at that time, and Humphrey testified that she had a red mark on her neck that appeared to have been made recently. Thus, even without Humphrey's testimony about what Campbell said, there was still sufficient evidence from which the jury could have reasonably concluded that Perkins was guilty of third-degree domestic violence based on harassment. Accordingly, Perkins's conviction was not based solely on inadmissible evidence.
Reviewing the entire record as a whole, "is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty" even without Humphrey's testimony about the statements Campbell made to him. United States v. Hasting, 461 U.S. 499, 510, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). See also Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Thus, under the circumstances set forth herein, any error in the admission of Humphrey's testimony about Campbell's statements was harmless. See Rule 45, Ala. R.App. P. Accordingly, we affirm the trial court's judgment.
AFFIRMED.
WINDOM, J., concurs.
KELLUM, J., concurs specially, with opinion.
WELCH, J., concurs in the result.
*614 KELLUM, Judge, concurring specially.
Although I agree with the ultimate conclusion in the majority opinion that the admission of Humphrey's testimony about Campbell's statements was harmless, I write specially to clarify my understanding of the appropriate standard of review in cases involving the application of the harmless-error rule. Our harmless-error rule provides, in pertinent part:
"No judgment may be reversed or set aside ... on the ground of ... improper admission or rejection of evidence ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
Rule 45, Ala. R.App. P.
In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court of the United States held that before the violation of certain constitutional rights can be held harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt. The Court reasoned: "While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard." Chapman, 386 U.S. at 24, 87 S.Ct. 824.
In Ex parte Greathouse, 624 So.2d 208 (Ala.1993), the Alabama Supreme Court explained:
"In so holding [in United States v. Hasting, 461 U.S. 499, 509 (1983)], the Court observed that, `[s]ince Chapman, the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations,' id. (citations omitted), and stated that the proper question for a reviewing court to ask is: `[A]bsent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?'"
624 So.2d at 210. Thus, in order to determine if the error alleged to be harmless did not "injuriously affect[] substantial rights of the parties" Rule 45, Ala. R.App. P., the reviewing court must review the trial record as a whole to determine if it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty" absent the improperly introduced evidence. Greathouse, 624 So.2d at 210. See also Ex parte Hutcherson, 677 So.2d 1205 (Ala.1996).